IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NORTH AMERICAN VAN LINES, INC.<br>Plaintiff,<br><br>v.<br><br>NORTH AMERICA PRIME INC. and EAN MANNING, an individual<br>;<br>Defendants. | Case No. 1:17-cv-298<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR TRADEMARK INFRINGMENT

Plaintiff North American Van Lines, Inc. ("NAVL") states the following for its Complaint against Defendants North America Prime Inc. d/b/a North America Prime Lines ("NAPL") and Ean Manning ("Manning")(collectively "Defendants"):

## NATURE OF THE ACTION

1. This is a civil action for willful federal trademark infringement, cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125 *et seq.,* and common law unfair competition.

2. NAVL and NAPL are in the business of selling and/or offering for sale transportation services.

3. NAVL markets and provides its transportation services under the trademark NORTH AMERICAN and the trade name NORTH AMERICAN VAN LINES (collectively, the "NAVL Marks").

4. NAVL has been marketing and selling its transportation services using the NAVL Marks since at least as early as 1969, and it owns several federal registrations for the mark. NAVL has expended considerable resources in building the goodwill associated with its famous NAVL Marks in connection with transportation services. NAVL markets its transportation services through its websites located at www.northamericanvanlines.com and www.northamerican.com.

5. The President of NAPL, Manning, was formerly an officer of a company named North America Van Lines, Inc., which operated a website under the domain name northamericavanlines.com. A copy of the Secretary of State records listing Mr. Manning as an officer of North America Van Lines, Inc. is attached as **Exhibit A.**

6. The other officer at North America Van Lines, Inc. was Eli Ashkenazi.

7. On November 18, 2015, NAVL sent a cease and desist letter to North America Van Lines, Inc. advising it of NAVL's trademark rights and demanded that North America Van Lines, Inc. cease all use of the NAVL Marks and cease use and operation of the www.northamericavanlines.com domain name and website. A copy of the November 18, 2015 cease and desist letter is attached as **Exhibit B.**

8. On December 1, 2015, recognizing NAVL's trademark rights, North America Van Lines, Inc.'s attorney assured NAVL that all use of the NORTH AMERICA and NORTH AMERICA VAN LINES trademarks would cease and that it would cease use and operation of the northamericavanlines.com domain name and website. A copy of the December 1, 2015 letter sent by North America Van Lines, Inc.'s attorney is attached as **Exhibit C.**

9. North America Van Lines, Inc. voluntarily dissolved in 2016 and the northamericavanlines.com domain name was abandoned.

4818-5930-5035.2

10. However, on May 17, 2016, NAVL again was required to enforce its rights against Eli Ashkenazi under a new company he started named North American Moving Company, Inc., which was operating through a website with the domain name www.northamericaprime.com.

11. On May 17, 2016, NAVL sent a cease and desist letter to North American Moving Company, Inc. demanding that it cease all use of marks confusing similar to the NAVL Marks and cease use and operation of the northamericaprime.com domain name and website. A copy of the May 17, 2016 cease and desist letter is attached as **Exhibit D.** The registrant of the northamericaprime.com domain name was (and continues to be) Manning; Eli Ashkenazi's old partner at North America Van Lines, Inc. A copy of the May 31, 2016 WHOIS domain name search and July 6, 2016 WHOIS domain name are attached as **Exhibit E.**

12. Just recently, NAVL learned that a new transportation company, Defendant North America Prime Inc., was operating under the name NORTH AMERICA PRIME! (using blue lettering to mimic NAVL's coloring associated with the NAVL Marks) and marketing itself through an interactive website under the domain name northamericaprimelines.com; obviously intending to mimic NAVL's northamericavanlines.com domain name. Moreover, its movers wear shirts that simply display the words "NORTH AMERICA". A copy of the northamericaprimelines.com website demonstrating NAPL's use of the NORTH AMERICA mark is attached as **Exhibit F**.

13. NAVL's investigation further revealed that Manning is an officer of Defendant North America Prime Inc. In addition, the investigation revealed that the domain name www.northamericaprime.com is still owned and controlled by Manning and that the domain name is now directed to Defendant North America Prime Inc.'s website.

14. Manning's use of yet another confusingly similar company name to market its transportation services through a domain name that he knows infringes on the NAVL Marks is a blatant and willful violation of NAVL's trademark rights.

15. Defendant's use of the NORTH AMERICA, NORTH AMERICA PRIME!, and NORTH AMERICA PRIME LINE marks ("Infringing Marks") infringe on the NAVL Marks, has caused confusion among consumers, and has resulted in damages to NAVL and has diminished its goodwill and reputation.

16. NAVL has already experienced instances of actual confusion whereby consumers have had negative experiences with NAPL and erroneously believed that NAPL was NAVL. In at least one of these instances, it is alleged that NAPL stole all of the belonging's of a consumer's home that was loaded on a truck by NAPL. This consumer believed that NAVL, not NAPL, conducted the move and stole the consumer's belongings.

17. NAVL sent NAPL a cease and desist letter on February 3, 2017, demanding that it cease and desist from using the NAVL Marks. A copy of the February 3, 2017 cease and desist letter is attached as **Exhibit G.**

18. As of the filing of this Complaint, NAPL is still infringing the NAVL Marks and operating a website under the northamericaprime.com and northamericaprimelines.com domain names.

19. NAVL brings this action for federal trademark infringement and unfair competition under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125 *et seq.,* and trademark infringement and unfair competition under Indiana's common law. NAVL seeks a permanent injunction against Defendant's use of the Infringing Marks and

4818-5930-5035.2

any other designation confusingly similar to the NAVL Marks.  NAVL further seeks that this Court find Manning registered and used the northamericaprime.com domain name in violation of the ACPA, order Manning to transfer the northamericaprime.com domain name to NAVL, and award statutory damages of $100,000 against Manning.  NAVL also seeks monetary damages resulting from NAPL's use of the Infringing Marks, an accounting of NAPL's profits gained from such use, NAVL's attorneys' fees and costs, and punitive damages.

## PARTIES

20. Plaintiff North American Van Lines, Inc. is a Delaware corporation with its principal place of business located at 5001 U.S. Highway 30 West Fort Wayne Indiana 46818.

21. Defendant North America Prime Inc. d/b/a North America Prime Lines is a Florida corporation with its principal place of business located at 309 SW 78th Terrace, N. Lauderdale, FL 33068.

22. Manning is an individual that resides in Florida and is an officer of Defendant North America Prime Inc.  Manning is the registrant of the northamericaprime.com domain name.

## JURISDICTION AND VENUE

23. This action arises under 15 U.S.C. §§ 1114 and 1125(a) & (d) and under the common law of the state of Indiana.  This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1121 (Lanham Act claims), and 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).  This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) as this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

24.     This Court has may exercise personal jurisdiction over the Defendants under the Indiana Long-Arm Statute, because the Defendants have transacted business in Indiana and caused an injury in this state by marketing their transportation services to Indiana consumers using the Infringing Marks through its interactive websites located at www.northamericaprimelines.com and www.northamericaprime.com.

25.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred here; and (b) the Defendants are subject to personal jurisdiction here.  Further, Defendants have committed acts of infringement, cybersquatting, and unfair business practices in this district, and have caused injury in this district.

26.     This case involves an amount in controversy in excess of seventy-five thousand dollars ($75,000.00) for the damages suffered by NAVL directly, exclusive of costs and interest.

## FACTS COMMON TO ALL CLAIMS

### NAVL's Trademark Rights

27.     NAVL is, and was at all times relevant hereto, engaged in providing transportation services.

28.     The NORTH AMERICAN mark has been registered on the Principal Register of the United States Patent and Trademark Office since in 1971.  A copy of Certificates of Registration for the NORTH AMERICAN mark are attached as **Exhibit H.**

29.     NAVL has continuously marketed and performed its transportation services throughout the United States, including this judicial district.

30.     NAVL has millions of dollars to advertise, promote and sell its services using the NAVL Marks.  Based on NAVL's consistent and extensive use, the NAVL Marks have

become widely and favorably known, have become famous, and have acquired extensive goodwill.

31. NAVL is currently, and at all relevant times hereto, has been the exclusive owner of all property rights in the NAVL Marks.

32. The NAVL Marks have been in continuous use since 1971 and its registrations are now incontestable under 15 U.S.C. § 1065.

33. Under the Trademark Act, NAVL has exclusive rights to the registered NORTH AMERICAN marks with respect to the services identified in the registrations. In addition, the incontestable status of the registrations serve as conclusive evidence of NAVL's right to use the NORTH AMERICAN mark in commerce, pursuant to 15 U.S.C. § 1115(b), in connection with transportation services.

34. NAVL has extensively advertised and promoted the NAVL Marks in association with its business. For example, NAVL has permanently displayed the NAVL Marks on trucks, trailers, shipping materials, sales contracts, on business signs located on the premises of authorized NAVL agents, and in yellow page listings, advertisements, brochures and on its websites www.northamericanvanlines.com and www.northamerican.com.

35. As a result of NAVL's continuous use of the NAVL Marks in connection its advertising, promotion, distribution, and sale of transportation services, the general consuming public has come to recognize the NAVL Marks as originating from and used by NAVL, and to associate and identify the services offered and sold under the NAVL Marks exclusively with NAVL. NAVL derives an invaluable goodwill from this recognition, association, and identification by the consuming public.

**NAPL's Infringing Use and Unfair Competition**

36. NAPL's misappropriation of the NAVL Marks and its methods of unfair competition are blatant.

37. The transportation services offered by NAPL directly compete with those sold by NAPL under the NAVL Marks and the services are sold through overlapping channels of trade, primarily over the Internet.

38. The Infringing Marks used by NAPL are confusingly similar to the NAVL Marks, and have already caused confusion amongst consumers as to the source of the transportation services advertised and sold by NAPL.

39. Particularly, the Infringing Marks and NAVL Marks are similar in appearance, similar in sound, and similar in meaning.

40. NAVL has also received information and documentation evidencing that NAPL has been representing itself as NAVL.

41. Moreover, NAPL answers it phone as "NORTH AMERICA Movers," NORTH AMERICA Moving Company," and "NORTH AMERICA."

42. NAPL has knowingly, willfully, intentionally, and maliciously made and continues to make use of the Infringing Marks to falsely suggest that NAPL's transportation services originate from or are sponsored or endorsed by NAVL with full knowledge of NAVL's rights in the NAVL Marks.

43. NAPL's actions have harmed, and will continue to harm, NAVL's reputation and goodwill associated with the NAVL Marks, and result in additional injury that cannot entirely be quantified or captured.

**Manning's Cybersquatting**

44. Defendant Manning registered the northamericaprime.com domain name in bad faith with actual knowledge of NAVL's rights in the NAVL Marks. The domain name was registered by Manning on December 24, 2015; less than a week after NAVL sent its cease and desist letter to North America Van Lines, Inc. (Manning's prior company where he served as an officer).

45. Moreover, Manning has used, and continues to use, the northamericaprime.com domain name to confuse consumers and divert consumers from NAVL's business by directing them to the [www.northamericaprimelines.com](www.northamericaprimelines.com) website.

46. The northamericaprime.com domain name is confusingly similar to the NAVL Marks, which are owned by NAVL.

47. Manning acted with a bad faith intent to profit from his registration and use of the northamericaprime.com domain name evidenced from his prior knowledge of the NAVL Marks and that he lacked any intellectual property rights in the northamericaprime.com domain name or Infringing Marks at the time he registered the domain name. In addition, Manning's repeated violations of the NAVL Marks demonstrates his intent to divert customers from NAVL's online location for commercial gain.

## COUNT ONE - NAPL
### Federal Trademark Infringement
### (Lanham Act Section 32 (15 U.S.C. §§ 1114))

48. NAVL restates the preceding paragraphs as if fully incorporated herein.

49. NAVL owns all right, title and interest in and to the NAVL Marks and holds federal registrations for the NORTH AMERICAN mark.

50. NAPL's use of the Infringing Marks has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that NAPL's

transportation services originate from NAVL, are associated or connected with NAVL, or have the sponsorship, endorsement, or approval of NAVL.

51. NAPL has used marks confusingly similar to NAVL's federally registered marks in violation of 15 U.S.C. §1114, and NAPL's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among consumers and, additionally, cause injury to NAVL's goodwill and reputation as symbolized by the federally registered NAVL Marks, for which NAVL has no adequate remedy at law.

52. NAPL's actions are and were an intentional, willful, and malicious intent to trade on the goodwill associated with NAVL's federally registered NORTH AMERICAN mark, to NAVL's great and irreparable injury.

53. NAPL has caused and is likely to continue to cause substantial injury to consumers and to NAVL, and NAVL is entitled to injunctive relief and to recover NAPL's profits, actual damages, trebled profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116 and 1117.

### COUNT TWO - NAPL
### Federal Unfair Competition
### (Lanham Act Section 43(a) (15 U.S.C. §1125(a))

54. NAVL restates the preceding paragraphs as if fully incorporated herein.

55. NAVL owns all rights, title and interest in and to the NAVL Marks.

56. NAPL's use of the Infringing Marks has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that NAPL's transportation services originate from NAVL, are associated or connected with NAVL, or have the sponsorship, endorsement, or approval of NAVL.

4818-5930-5035.2

57. NAPL has made false representations, false descriptions, and false designations of origin of its services, and have infringed NAVL's common law rights in the NAVL Marks, in violation of 15 U.S.C. § 1125(a), and NAPL's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among consumers and, additionally, cause injury to NAVL's goodwill and reputation as symbolized by the NAVL Marks, for which NAVL has no completely adequate remedy at law.

58. NAPL's actions are and were an intentional, willful, and malicious intent to trade on the goodwill associated with the NAVL Marks, to NAVL's great and irreparable injury.

59. NAPL has caused and is likely to continue to cause substantial injury to the public and to NAVL, and NAVL is entitled to injunctive relief and to recover NAPL's profits, actual damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1125(a), 1116 and 1117.

## COUNT THREE - Manning
### Anticybersquatting Consumer Protection Act
### (15 U.S.C. §1125(d))

60. NAVL restates the preceding paragraphs as if fully incorporated herein.

61. NAPL registered and is using the northamericaprime.com domain name in bad faith.

62. The NAVL Marks were distinctive and famous at the time of Manning's registration of the northamericaprime.com domain name.

63. The northamericaprime.com domain name is confusingly similar to the NAVL Marks.

64. NAVL owns common law rights to the NAVL Marks and has registrations for the NORTH AMERICAN mark with the United States Patent and Trademark Office.

65. Manning has no bona fide use of the northamericaprime.com domain name.

4818-5930-5035.2

66. Manning's intent in registering and using the northamericaprime.com domain name was and is to divert consumers from the NAVL's online location to NAPL's website solely to harm the goodwill of the NAVL Marks and NAVL for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the content of the NAPL website.

67. Manning is using the northamericaprime.com domain name without authorization from NAVL and with the bad faith intent to mislead and deceive the public.

68. The aforesaid actions constitute cyberpiracy in violation of § 43(d) of the Trademark Act of 1946 (as amended), 15 U.S.C. § 1125(d).

69. Manning's unauthorized registration and use of the northamericaprime.com domain name has, is, and, unless remedied, will continue to cause injury to NAVL and the goodwill NAVL has built in the NAVL Marks and its business reputation.

70. NAVL has no adequate remedy at law.

## COUNT THREE - NAPL
### Common Law Unfair Competition

71. NAVL restates the preceding paragraphs as if fully incorporated herein.

72. NAVL owns all right, title and interest in and to the NAVL Marks.

73. NAPL's use of the Infringing Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that NAPL's transportation services originate from NAVL, or are associated or connected with NAVL, or have the sponsorship, endorsement, or approval of NAVL.

74. The natural and probable tendency and effect of NAPL's conduct is to deceive the public so as to pass off the services or business of NAPL as and for that of NAVL.

75. NAPL has caused and is likely to continue to cause substantial injury to the public and to NAVL, and NAVL is entitled to injunctive relief and to recover NAPL's profits, actual damages, costs, and reasonable attorney's fees.

76. NAPL's wrongful conduct was willful and deliberate or recklessly indifferent to the rights of NAVL, warranting an award of punitive damages under Indiana common law.

## CONCLUSION

WHEREFORE, NAVL prays the Court enter judgment in its favor and award NAVL relief as follows:

1. That the Court permanently restrain and enjoin NAPL, its agents, servants, employees, and other persons in active concert with NAPL, including but not limited to Manning, from any and all further use of the Infringing Marks or any other mark confusingly similar to the NAVL Marks;

2. That the Court permanently restrain and enjoin NAPL, their agents, servants, employees, and other persons in active concert with Defendants, from any and all further use of any domain name incorporating the words "northamerica" or "northamerican;

3. That NAVL be awarded all damages incurred as a direct and proximate cause of NAPL's unlawful conduct;

4. That NAVL recover from NAPL all amounts, including profits, received by NAPL as a direct and proximate cause of NAPL's unlawful conduct;

5. That NAVL recover from NAPL exemplary and punitive damages, based on its willfulness and/or reckless indifference to NAVL's trademark rights, available under Indiana common law;

6. That Defendants pay NAVL's reasonable attorney's fees, based on their willful and deliberate conduct in this exceptional case pursuant to 15 U.S.C. § 1117(a);

7. That NAVL be awarded prejudgment interest;

8. That NAVL be awarded post-judgment interest;

9. That the Court find Manning registered and used the northamericaprime.com domain names in violation of the ACPA and order Manning to transfer the northamericaprime.com domain name to NAVL and order Manning to pay NAVL $100,000 in statutory damages; and

10. That the Court grant NAVL such other and further relief as the Court may deem just and proper.

## REQUEST FOR JURY TRIAL

NAVL requests a jury trial for all causes of action so triable.

Dated: July 14, 2017                    Respectfully Submitted,

By: *s/ Siobhán M. Murphy*
Siobhán M. Murphy (ARDC #6207431)
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.463.3325
F: 312.345.1778
Siobhan.Murphy@lewisbrisbois.com

*Attorney for Plaintiff*

4818-5930-5035.2