UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NORTH AMERICAN VAN LINES, INC., )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>NORTH AMERICA PRIME INC. and )<br>EAN MANNING, )<br>    Defendants. ) | CAUSE NO.: 1:17-CV-298-TLS-PRC |

### FINDINGS, REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE PURSUANT TO
### 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on Plaintiff's Motion for Entry of Default Judgment [DE 29], filed by Plaintiff North American Van Lines, Inc. ("NAVL") on June 1, 2018.

On June 20, 2018, District Court Chief Judge Theresa L. Springmann entered an Order [DE 31] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Order was clarified in a July 24, 2018 Order issued by Judge Springmann. This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that Judge Springmann award the remedies requested by NAVL with a couple of alterations.

### PROCEDURAL BACKGROUND

On July 14, 2018, NAVL filed a Complaint against Defendants North America Prime Inc. ("NA Prime") and Ean Manning. NAVL brings claims of trademark infringement in violation of 15 U.S.C. § 1114, cybersquatting in violation of 15 U.S.C. § 1125(d), and unfair competition in violation of 15 U.S.C. § 1125(a) and common law.

In her June 20, 2018 Order, Judge Springmann found that default by NA Prime and Manning had been established and that NA Prime and Manning are liable to NAVL as alleged in the Complaint. Judge Springmann referred this matter to the undersigned for a report and recommendation on damages. Judge Springmann clarified in a July 24, 2018 Order that the report and recommendation should address all of NAVL's requested remedies.

The undersigned ordered a supplemental brief in support of default judgment, which NAVL filed on August 21, 2018. This brief was itself supplemented, at the Court's order, on September 4, 2018.

## FACTUAL BASIS

After a default is entered in a case, the Court accepts as true all well-pled allegations in the complaint regarding liability. *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 274, 255 (7th Cir. 2016). Thus, the following statements, taken from the Complaint, are considered true for the purpose of the instant motion.

NAVL markets and provides transportation services under the trademark NORTH AMERICAN and the trade name NORTH AMERICAN VAN LINES (collectively, the "NAVL Marks"). NAVL is the exclusive owner of all property rights in the NAVL Marks, which have been in continuous use since 1971.

NAVL has extensively advertised and promoted the NAVL Marks in association with its business, and NAVL has spent millions of dollars to advertise, promote and sell its services using the NAVL Marks. NAVL has permanently displayed the NAVL Marks on trucks, trailers, shipping materials, sales contracts, business signs located on the premises of authorized NAVL agents, and

2

its websites www.northamericanvanlines.com and www.northamerican.com. NAVL also uses the NAVL Marks in yellow page listings, advertisements, and brochures.

As a result of NAVL's continuous use of the NAVL Marks in connection with its advertising, promotion, distribution, and sale of transportation services, the general consuming public has come to recognize the NAVL Marks as originating from and used by NAVL and to associate and identify the services offered and sold under the NAVL Marks exclusively with NAVL. NAVL derives goodwill from this recognition, association, and identification by the consuming public.

Manning, currently the president of NA Prime, was formerly an officer of a company named North America Van Lines, Inc., which operated a website under the domain name northamericavanlines.com. The other officer of North America Van Lines, Inc. was Eli Ashkenazi.

On November 18, 2015, NAVL sent a cease and desist letter to North America Van Lines, Inc. advising it of NAVL's trademark rights and demanded that North America Van Lines, Inc. cease all use of the NAVL Marks and cease use and operation of the www.northamericavanlines.com domain name and website.

On December 1, 2015, recognizing NAVL's trademark rights, North America Van Lines, Inc.'s attorney assured NAVL that all use of the NAVL Marks would cease and that it would cease use and operation of the northamericavanlines.com domain name and website.

North America Van Lines, Inc. voluntarily dissolved in 2016 and the northamericavanlines.com domain name was abandoned. However, on May 17, 2016, NAVL again was required to enforce its rights against Ashkenazi under a new company he started named North American Moving Company, Inc., which was operating through a website with the domain name

3

www.northamericaprime.com.

On May 17, 2016, NAVL sent a cease and desist letter to North American Moving Company, Inc. demanding that it cease all use of marks confusingly similar to the NAVL Marks and cease use and operation of the northamericaprime.com domain name and website. The registrant of the northamericaprime.com domain name was and still is Manning, Ashkenazi's former partner at North America Van Lines, Inc.

NAVL learned that NA Prime, which offers transportation services, was operating under the name "NORTH AMERICA PRIME!" and using blue lettering to mimic the coloring associated with the NAVL Marks. NA Prime uses the marks "NORTH AMERICA," "NORTH AMERICA PRIME!," and "NORTH AMERICA PRIME LINES." NA Prime was marketing itself through an interactive website under the domain name northamericaprimelines.com, which was intended to mimic NAVL's northamericavanlines.com domain name. NA Prime's movers wear shirts that display the words "NORTH AMERICA." The domain name www.northamericaprime.com is still owned and controlled by Manning and that domain name is now directed to NA Prime's website.

NAVL has experienced instances of actual confusion whereby consumers have had negative experiences with NA Prime and erroneously believed that NA Prime was NAVL. In at least one of these instances, it is alleged that NA Prime stole all of the belongings of a consumer's home that was loaded on a truck by NA Prime. This consumer believed that NAVL, not NA Prime, conducted the move and stole the consumer's belongings.

NAVL sent NA Prime a cease and desist letter on February 3, 2017, demanding that it cease and desist from using the NAVL Marks. NA Prime had not complied with the demands of that letter as of the filing of the Complaint in this litigation on July 14, 2017.

**DISCUSSION**

As noted above, Judge Springmann has determined that NA Prime and Manning are liable to NAVL as alleged in the Complaint, and this matter has been referred to the undersigned for a report and recommendation on remedies. NAVL requests statutory damages of $2,000,000 under 15 U.S.C. § 1117(c)(2) for trademark counterfeiting; statutory damages of $100,000 under 15 U.S.C. § 1117(d) for cybersquatting; a permanent injunction, including an order to transfer NA Prime's domain names to NAVL; attorneys fees and costs, and post-judgment interest[1]. The Court will address each remedy separately.

**A. Statutory Damages for Trademark Counterfeiting**

At any time before final judgment is rendered, a plaintiff in a trademark counterfeiting action may choose to recover statutory damages instead of actual damages. 15 U.S.C. § 1117(c). If the Court determines that a defendant's use of a counterfeit mark was willful, statutory damages are capped at $2,000,000 per counterfeit mark per type of service. *Id.* Section 1117 does not provide guidance on how to select an award amount within the permissible range. Courts have looked to caselaw applying the statutory damage provision of the Copyright Act for guidance in applying the statutory damage provision of the Lanham Act. *See Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, No. 03 C 4986, 2004 WL 2534378 *4 (N.D. Ill. Nov. 8, 2004) (collecting cases). Under the Copyright Act, courts are not restricted by a rigid formula for the calculation of damages, and may consider factors such as barriers to proving actual damages, circumstances of the violation, and the use of damages as a deterrent to future infringement. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.3d 1224, 1229 (7th Cir. 1991).

---

[1] NAVL requested prejudgment interest in its first brief but has since withdrawn that request.

NAVL argues that an award of $2,000,000 in statutory damages is warranted. Manning, who is both a named defendant and an officer of co-defendant NA Prime, was an officer of another company, North America Van Lines, Inc., that received a cease and desist letter from NAVL regarding the NAVL Marks. That company recognized NAVL's rights in the NAVL Marks and represented that it would cease use of the marks. Manning was also the registrant of an Internet domain name used by a second company, North American Moving Company, Inc., which likewise received a cease and desist letter from NAVL. Ultimately, Manning became president of the defendant company, NA Prime, which uses marks similar to NAVL's marks and mimics the coloring of NAVL's marks. NA Prime received a cease and desist letter but continued using its marks.

Manning and NA Prime (through Manning, its president) had notice of NAVL's marks. The pattern of companies with connections to Manning and with names similar to NAVL shows intent to willfully counterfeit NAVL's marks in order to trade on NAVL's good will. NA Prime's marks are confusingly similar to the NAVL Marks, and Manning and NA Prime acted in bad faith in offering transportation services under these marks. Thus, statutory damages of up to $2,000,000 are authorized by 15 U.S.C. § 1117(c).

Because neither defendant has appeared to defend against the action, NAVL has had no opportunity to obtain evidence through discovery with which to prove its actual damages. The circumstances of the infringement show a high level of willful, bad faith action by Defendants. A high damage award serves to deter behavior such as this. Therefore, the undersigned recommends that the Court enter an award of $2,000,000 on this claim.

### B. Statutory Damages for Cybersquatting

Similarly, a plaintiff in a cybersquatting action may, before entry of judgment, elect statutory damages in lieu of actual damages. 15 U.S.C. § 1117(d). Statutory damages must be at least $1,000 and not more than $100,000 per domain name. *Id.* As explained above, the amount of statutory damages to be awarded within this range is a matter for the Court's discretion. NAVL requests an award of $50,000 each for the two domain names at issue, northamericaprimelines.com and northamericaprime.com, for a total of $100,000.

The circumstances surrounding Manning's involvement with North America Van Lines, Inc. and North American Moving Company, Inc.—and their history of receiving cease and desist letters from NAVL—before becoming president of NA Prime impute actual knowledge of the NAVL Marks on both defendants. Further, after North American Moving Company received a cease and desist letter concerning the northamericaprime.com domain name, Manning continued to use the domain name under a new company—NA Prime. NA Prime's use of both northamericaprimelines.com and northamericaprime.com continued after receipt of a cease and desist letter. The use of the domain names is in bad faith.

As before, the failure of Manning and NA Prime to appear and defend against this action has deprived NAVL the opportunity to engage in discovery on this claim with which to prove its actual damages, and it is desirable to deter similar conduct in the future. Thus, the undersigned recommends that the Court award $100,000 total in damages on the cybersquatting claim.

### C. Permanent Injunction and Equitable Relief

The Court has the power to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under

[15 U.S.C. § 1125(a), (c), or (d)]." 15 U.S.C. § 1116(a). A permanent injunction is appropriate if (1) a plaintiff has suffered an irreparable injury, (2) legal remedies are inadequate to compensate for that injury, (3) an equitable remedy is warranted when considering the balance of hardships between the parties, and (4) the public interest would not be disserved if the injunction is issued. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

NAVL asks the Court to enter an order permanently enjoining NA Prime, Manning, and their agents, servants, employees, and other persons in active concert with NA Prime or Manning from any and all further use of (1) the marks "NORTH AMERICA," NORTH AMERICA PRIME!," and "NORTH AMERICA PRIME LINE" and any other mark confusingly similar to the NAVL Marks and (2) any domain name incorporating the words "NORTH AMERICA" or "NORTH AMERICAN." NAVL requests that NA Prime and Manning be ordered to file with the Court and serve on NAVL, within thirty days of the issuance of the injunction, a written report setting forth under oath and in detail the manner and form in which NA Prime and Manning have complied with the injunction.

NAVL also asks the Court to issue an order stating that NA Prime and Manning registered the domain names northamericaprime.com and northamericaprimelines.com in violation of the Anticybersquatting Consumer Protection Act and ordering NA Prime and Manning, within thirty days of the Court's order, to transfer the domain names to NAVL if they retain any right to those names.

"[D]amage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). "The most corrosive and irreparable harm attributable to trademark

infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Id.* (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). NAVL has suffered loss to its goodwill as a result of NA Prime's and Manning's infringement of the NAVL Marks. NAVL has experienced irreparable harm, and there is no adequate legal remedy for this harm.

In balancing the harms between the parties, the requested injunction is slightly overbroad. NAVL requests that Manning and NA Prime be enjoined from using any domain name incorporating the words "NORTH AMERICA" or "NORTH AMERICAN" where the domain name is used for any purpose whatsoever. The requested injunction already prohibits Manning and NA Prime from using any marks confusingly similar to the NAVL Marks and from using the specific domain names in question. Thus, in balancing the harms to the parties, the requested injunction should be changed to enjoin Manning and NA Prime from using domain names with "NORTH AMERICA" or "NORTH AMERICAN" only where the domain name is used for the purpose of either (1) offering goods or services of a type offered by NAVL or (2) redirecting Internet traffic from NAVL.

Finally, the public is served by ending the use of the confusingly similar marks used by Manning and NA Prime. "[T]he public . . . has an interest in knowing with whom they do business." *Id.* at 433. Thus, the undersigned recommends that the Court issue the injunctive and equitable relief as requested except with the alteration noted above to the injunctive relief regarding domain names.

### D. Attorneys Fees and Costs

Under 15 U.S.C. § 1117, trademark infringement plaintiffs may recover "the costs of the action," and "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The award of costs is made as a matter of course. *Id.*; Fed. R. Civ. P. 54(d)(1). The decision to award attorneys fees is left to the Court's discretion. *TE-TA-MA Truth*

*Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 257 (7th Cir. 2004). Willful infringement on the part of defendants is one way in which a case may be "exceptional" for the purpose of awarding attorney fees. *NCAA v. Kizzang LLC*, 304 F. Supp. 3d 800, 813 (S.D. Ind. 2018) (citing *MetroPCS v. Devor*, 215 F.Supp.3d 626, 638 (N.D. Ill. 2016)).

As discussed above, Manning and NA Prime willfully infringed on the NAVL Marks. Accordingly, the case is exceptional and the Court may award reasonable attorney fees. Manning and NA Prime have not engaged in this litigation to set forth defenses to the claims against them or provide reasons why NAVL's requested remedies should be denied. The undersigned recommends that NAVL be awarded its reasonable attorney fees and costs.

### E. Post-Judgment Interest

In the federal court system, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Though NAVL asserts that it is entitled to 8% interest as allowed by Indiana Code 24-4.6-1-101(2), federal law governs the award of post-judgment interest. *See Travelers Ins. Co. v. Transport Ins. Co.*, 846 F.2d 846, 1053 (7th Cir. 1988) (holding that, even when a federal court sits in diversity, federal law governs post-judgment interest awards). The Court recommends that NAVL be awarded post-judgment interest under 28 U.S.C. § 1961.

### CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Judge Springmann **GRANT in part** and **GRANT with relief different than requested in part** the remedies requested in Plaintiff's Motion for Entry of Default Judgment [DE 29]. The Court **RECOMMENDS** that Judge Springmann order the following remedies in favor of Plaintiff North American Van Lines, Inc.:

(1) an award in the amount of $2,000,000 for trademark counterfeiting;

(2) an award in the amount of $100,000 for cybersquatting;

(3) the injunctive and equitable relief as requested by NAVL, except altered to enjoin Manning and NA Prime from using domain names containing "NORTH AMERICA" or "NORTH AMERICAN" only where the domain name is used for the purpose of offering either goods or services of a type offered by NAVL or redirecting Internet traffic from NAVL;

(4) reasonable attorney fees and costs; and

(5) post-judgment interest pursuant to 28 U.S.C. § 1961.

The Court further **RECOMMENDS**, if reasonable attorney fees are awarded, that Judge Springmann set that matter for further briefing.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 17th day of October, 2018.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT